Frances S. Kaminer (State Bar 108004)
Walter K. Pyle (State Bar 98213)
LAW OFFICES OF WALTER K. PYLE
2039 Shattuck Avenue, Suite 202
Berkeley, CA 94704
(510) 849-4424
*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN F. HUTCHENS, ZAMORA MOTON, and BABY S.A., by John F. Hutchens, next friend, <br><br> *Plaintiffs,* <br><br> v. <br><br> ALAMEDA COUNTY MEDICAL CENTER, and DOES 1-20, <br><br> *Defendants.* | No. C07- <br><br> **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** <br><br> **(Demand for Jury Trial)** |

Plaintiffs John F. Hutchens, Zamora Moton, and Baby S.A., by John F. Hutchens, next friend, state as follows:

1. This is an action pursuant to 42 U.S.C. § 1983 for violation of plaintiffs' civil rights. This court has jurisdiction of the subject matter pursuant to 28 U.S.C. 1331 as a civil action arising under the Constitution and laws of the United States. All parties reside in this district.

2, Plaintiff does not know the true names of defendants Does 1 through 20. They are sued herein pursuant to § 474 of the California Code of Civil Procedure.

3. Plaintiffs John F. Hutchens and Zamora Moton are the parents of Plaintiff Baby S.A., who was born in November 2005 on the premises of Defendant Alameda County Medical Center, at Highland Hospital, where Zamora Moton was a patient.

4. While Zamora Moton was a patient, defendants administered certain drugs to her in the course of her treatment, which caused her to test positive for drugs. When Plaintiff Baby S.A. was born, defendants placed a "hold" on the baby, based on the positive drug test of his mother.

5. An Alameda County social worker, Rudolpho Hernandez, came to the hospital to investigate the case. Upon information and belief, Hernandez was informed that the hospital had prescribed codeine cough syrup to the mother, and that Baby S.A. tested negative for opiates, and Hernandez told the parents and the hospital that the matter was resolved and there was no need for a "hold" on the baby.

6. Hernandez asked the parents to inspect the Moton home, and Plaintiff Hutchens accompanied Hernandez to the apartment. Hernandez told Hutchens that everything was satisfactory. Plaintiff Hutchens returned to the hospital.

7. Thereafter, defendants at the hospital told the parents that a "hold" had again been placed on the baby, at the request of Hernandez, and restricted the parents' access to the baby and would not allow Plaintiff Moton to have the baby alone in her room. Hernandez did not return phone calls from the parents that day or throughout the weekend.

8. Plaintiff Moton was required to move out of her room and was given a small cot in the waiting room next to the nursery, and was not allowed visitors.

9. The following Monday Hernandez returned Plaintiff Hutchens' phone call, and told him that he had reconsidered his decision to release the baby after he had reviewed the past history of Plaintiff Moton and her contacts several years ago with Alameda County Social Services, and stated further that there would be what he termed a custody hearing to determine the fate of the baby. Hutchens arranged for a hearing that afternoon. Plaintiff Hutchens attended the "hearing," which was held at Alameda County Social Services.

10. Hernandez stated at that meeting the he had investigated the report of a positive drug test from the mother, but that the hospital had prescribed drugs to the mother, and he had no further concerns about substance abuse. Hernandez further stated that he had reviewed the agency files on the mother and found a report of what he termed "assaultive behavior" by the mother towards an unnamed social worker some six years earlier, and that he had considered her "arrest record," and then placed a "hold" on the baby. Hernandez acknowledged he had no grounds to assert that Plaintiff Hutchens was in any way unqualified to have custody of the baby. Plaintiff Hutchens protested the interference with the parents' right to the care and custody of their baby without government interference.

11. Thereafter, Hernandez and Alameda County Social Services released the "hold" on the baby and the parents were allowed to take the baby home from the hospital.

12. The baby was seized and detained without a warrant and without an adequate investigation. No warrant or court order for the seizure or detention of the baby was sought or obtained, and no emergency existed which would justify the seizure or detention of the baby by defendants herein, which seriously interfered with the custodial and familial relationship between parent and child, and was in violation of the Fourth and Fourteenth Amendments, the California Welfare and Institutions Code and applicable regulations. Upon information and belief, defendants herein conspired with, acted in concert and unlawfully cooperated with Hernandez and Alameda County Social Services in the unlawful seizure and detention of the baby without due process of law, and that defendants herein did not have legal grounds to seize or detain the baby. Defendants herein also refused the parents' request to take appropriate steps to release their baby, even though they were holding the baby without a warrant or other legal process.

13. Each plaintiff served defendants with California tort claim forms on May 2, 2006, by service on the County of Alameda, and the claim was rejected by the County. Plaintiffs assert that service of the tort claim on the County of Alameda constituted service on the defendant Alameda County Medical Center.

14. Defendants' acts and omissions were performed negligently or intentionally and constituted unlawful restraint and false imprisonment under California law,

15. Defendants' acts and omissions constituted intentional or negligent inflection of emotional distress under California law.

16. Defendants' acts and omissions were in violation of Article I of the California Constitution, which protects the right to due process of law and against unlawful search and seizure, and in violation of plaintiffs' civil rights protected by California Civil Code section 52.1.

17. Upon information and belief, defendants' actions were part of a pattern and practice to seize and detain children in the absence of an emergency and in the absence of a warrant, without an adequate investigation, which pattern and practice resulted in injury to plaintiffs, including mental, physical and emotional pain and suffering and loss of income and other expenses.

18. Upon information and belief, defendants knew they were acting contrary to law, and acted with oppression and in conscious or reckless disregard of plaintiffs' rights, entitling plaintiff to punitive damages against the individual defendants herein.

WHEREFORE, plaintiff prays that defendants be required to pay plaintiff damages in an amount according to proof; that defendants be required to pay plaintiff exemplary and punitive damages in an amount according to proof; that defendants be required to pay plaintiff attorneys fees and costs of suit herein incurred; for injunctive relief, preventing defendants in the future from engaging in a pattern and practice of seizing or detaining

*Complaint*

children in the absence of an emergency and without a warrant;and for such other and further relief as may be just.

*[signature]*
_____
Frances S Kaminer
*One of Plaintiffs' Attorneys*

## Jury Demand

Plaintiffs demand trial by jury.

*[signature]*
_____
Frances S Kaminer
*One of Plaintiffs' Attorneys*

5

*Complaint*