1  GREG J. ROCKWELL, ESQ. (SBN 67305)
   grockwell@bjg.com
2  JILL P. SAZAMA, ESQ. (SBN 214215)
   jsazama@bjg.com
3  BOORNAZIAN, JENSEN & GARTHE
   A Professional Corporation
4  555 12th Street, Suite 1800
   P. O. Box 12925
5  Oakland, CA 94604-2925
   Telephone: (510) 834-4350
6  Facsimile: (510) 839-1897

7  Attorneys for Defendant ALAMEDA
   COUNTY MEDICAL CENTER

8

9                    UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11  JOHN HUTCHENS, ZAMORA MOTON,      )   Case No.: 07 CV 05600 SBA
    and BABY S., by JOHN HUTCHENS, next )   Related case: 06 CV 06870 SBA
12  friend                            )
                                      )   ALAMEDA COUNTY MEDICAL
13            Plaintiffs,             )   CENTER'S NOTICE OF MOTION AND
                                      )   MOTION TO DISMISS AMENDED
14  vs.                               )   COMPLAINT PURSUANT TO FED. R.
                                      )   CIV. P. 12(B)(6); MEMORANDUM OF
15  ALAMEDA COUNTY MEDICAL CENTER,)   POINTS AND AUTHORITIES IN
    and DOES 1-20,                    )   SUPPORT OF SAME
16                                    )
             Defendants.              )   Date:  Tuesday, April 29, 2008
17                                    )   Time:  1:00 p.m.
                                      )   Dept:  Courtroom 3, 3rd Floor
18  _____  )
                                          Complaint filed on November 2, 2007
19

20  TO  PLAINTIFFS  AND  ALL  OTHER  PARTIES  AND  THEIR  ATTORNEYS  OF

21  RECORD:

22       PLEASE TAKE NOTICE THAT on Tuesday, April 29, 2008 at 1:00 p.m., or as soon

23  thereafter as the matter may be heard, in Courtroom 3, 3rd Floor, before the Honorable Saundra B.

24  Armstrong in the Oakland Courthouse of the above-captioned court, located at 1301 Clay Street,

25  Oakland, California, defendant ALAMEDA COUNTY MEDICAL CENTER (hereafter "ACMC")

26  will and hereby does move to dismiss all causes of action alleged against it in the Amended

27

                                    -1-

1  Complaint for Damages and Injunctive Relief (hereafter "Amended Complaint") filed by plaintiffs

2  JOHN HUTCHENS, ZAMORA MOTON, and BABY S., (hereafter "Plaintiffs") pursuant to Rule

3  12(b)(6) of the Federal Rules of Civil Procedure. ACMC moves to dismiss on the grounds that

4  Plaintiffs have failed to state a claim against ACMC; Plaintiffs' state law claims are time-barred

5  for failure to present a claim to ACMC as required by the California Government Tort Claims Act;

6  Plaintiffs' state law claims are barred by various state law immunities; and as to Plaintiff's Civil

7  Code section 52.1 claim, it fails to state a claim. Therefore, all claims against defendant ACMC

8  should be dismissed.

9        This motion is supported by this notice of motion, the accompanying memorandum of

10  points and authorities, a request for judicial notice and such other records and documents on file

11  with the court and/or that may be lawfully presented at the time of hearing on this matter.

12  DATED: March 14, 2008

                            BOORNAZIAN, JENSEN & GARTHE
13                          A Professional Corporation

14

15                          By: _____/s/  Jill Sazama, Esq._____
                                    JILL P. SAZAMA, ESQ.
16                                  Attorneys for Defendant
                                    ALAMEDA COUNTY MEDICAL
17                                  CENTER

18

19

20

21

22

23

24

25

26

27

-2-

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

## OF MOTION TO DISMISS

### TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| I. | FACTUAL AND PROCEDURAL BACKGROUND…………………….. | 3 |
| II. | ARGUMENT…………………………………………………………….. | 5 |
|  | A. Plaintiff Has Failed to Allege Sufficient Facts to State a Section 1983 Claim Against ACMC………...………………………………… | 5 |
|  | 1. Plaintiffs Have Failed to Allege Facts to Support a Violation of Their Constitutional Rights by ACMC…………………….......... | 6 |
|  | a. Alleged Policy to Seize and Detain Children | 6 |
|  | b. Alleged Policy of Non-Consensual Screening | 10 |
|  | 2. ACMC Did Not Have Customs or Policies Which Amount to Deliberate Indifference to Plaintiffs' Constitutional Rights……….. | 12 |
|  | 3. ACMC's Policies or Customs Were Not the Moving Force Behind the Alleged Violation………………………………………….. | 13 |
|  | B. Plaintiffs' State Law Claims Are Time-Barred…………………….. | 14 |
|  | C. Plaintiffs' State Law Claims are Barred by State Law Immunities…………………………………………………………………. | 16 |
|  | D. Plaintiffs' Civil Code Section 52.1 Claim is Not Well-Pleaded…. | 17 |
| III. | CONCLUSION………………………………………………………….. | 18 |

ALAMEDA COUNTY MEDICAL CENTER'S NOTICE OF MOTION AND MOTION TO DISMISS
AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6); MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF
Case no. 07 CV 5600 SBA

**TABLE OF AUTHORITIES**

Page

**Cases**

*Arnold v. Internat'l Business Machines Corp.*, 637 F.2d 1350
(9th Cir. 1981)............................................................. 6

*Bd. of the County Comm'rs v. Brown*, 520 U.S. 397 (1997)..................... 7

*Chandler v. Miller*, 520 U.S. 305 (1997) ................................ 11

*City and County of San Francisco v. Ballard*, 136 Cal.App.4th 381 (Cal. Ct. App.
2006)........................................................................ 18

*Curnow v. Ridgecrest Police*, 952 F.3d 321 (9th Cir. 1991) .................... 6

*Dixon v. City of Turlock*, 219 Cal.App.3d 907 (Cal. Ct. App. 1990)............... 15

*Ferguson v. City of Charleston*, 532 U.S. 67, 74 n.7 (2001).......................... 10-12

*Jacqueline T. v. Alameda County Child Protective Services*, 155 Cal.App.4th 456
(Cal. Ct. App. 2007).......................................................... 16,17

*Jones v. Kmart Corp.*, 17 Cal.4th 329 (Cal. 1998)............................... 18

*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001)............................ 6

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)............................. 5, 8

*Munoz v. State of California*, 33 Cal.App.4th 1767 (Cal. Ct. App. 1995)............ 14

*National Treasury Employees Union v. Von Raab*, 489 U.S.656 (1988) ............. 11

*Papasan v. Allain*, 478 U.S. 265 (1986)............................................ 15

*Sanchez v. County of San Diego*, 464 F.3d 916 (9th Cir. 2006) ..................... 11,12

*Santee v. Santa Clara County Office of Educ.*, 220 Cal.App.3d 702 (Cal. Ct. App.
1990)........................................................................ 15

*Van Ort v. Estate of Stanewich*, 92 F.3d 831, 837 (9th Cir. 1996) ................... 14

*Venegas v. County of Los Angeles*, 32 Cal.4th 820 (Cal. 2004)...................... 18

*Vernonia School District 47J v. Acton*, 515 U.S. 646 (1995)........................ 11

**Statutory Authority**

42 U.S.C. section 1983.......................................................... 3,5,6,8,10,
12,13,14,18

California Civil Code section 52.1…………………………………………… 5,17,18

Cal. Gov. Code § 815…………………………………………….......... 16

Government Code section 820.2…………………………………………… 16,17

Government Code section 820.4…………………………………………… 16,

Cal. Gov. Code § 821.6……………………………………………. 17

Cal. Gov. Code § 905……………………………………………. 14

Cal. Gov. Code § 905.2……………………………………………. 14

Cal. Gov. Code § 911.2……………………………………………. 14

Cal. Gov. Code § 911.4……………………………………………. 14, 15

Cal. Gov. Code § 945.4……………………………………………. 14

Cal. Health & Safety Code § 101850, subd. (b), subd. (j)………………………… 7

Cal. Health & Saf. Code § 123605…………………………………………….. 8, 9

Cal. Penal Code § 11165.13…………………………………………….. 8,12

Cal. Welf. & Instit. Code § 300, subd. (b), subd. (g)………………………………… 9

Cal. Welf. & Instit. Code § 306 (a)(2)……………………………………………. 9

Cal. Welf. & Instit. Code § 308, subd. (a)……………………………………………. 9

Cal. Welf. & Instit. Code § 309, subd. (b) and (d)……………………………………… 9, 10

**Other Authority**

Alameda County Ordinance 0-98-56……………………………………………. 7

W. Prosser, Law of Torts § 41 at 238-39 (4th ed. 1971)…………………………….. 6

24981\427885

ALAMEDA COUNTY MEDICAL CENTER'S NOTICE OF MOTION AND MOTION TO DISMISS
AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6); MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF
Case no. 07 CV 5600 SBA

1   Because Plaintiffs' Amended Complaint in this case fails to state a claim, defendant

2   ALAMEDA COUNTY MEDICAL CENTER (hereafter "ACMC") hereby moves to dismiss all

3   causes of action therein pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

4   **I.      FACTUAL AND PROCEDURAL BACKGROUND**

5   Starting with their first complaint in the Related Action,[1] plaintiffs JOHN HUTCHENS,

6   ZAMORA MOTON and BABY S. (hereafter "Plaintiffs") have asserted civil rights violations and

7   other state law injuries based on a protective "hold" that was placed on their then-newborn child

8   by an Alameda County social worker, Rudolpho Hernandez.  Complaint in Related Action, at 3:21

9   – 9:20; Amended Complaint in Related Action,[2] at 10:7 – 15:21; Complaint, at 2:6-18; Amended

10  Complaint, at 2:24 – 4:20.

11  ACMC moved to dismiss the original Complaint in this action on February 19, 2008.  In its

12  motion, ACMC showed that, as to the section 1983 claim, ACMC and the County of Alameda are

13  separate public entities, and ACMC cannot be held liable for the decisions or actions of a third

14  party, such as Alameda County social worker Rudolpho Hernandez.  ACMC's actions did not

15  amount to deliberate indifference to Plaintiffs' rights, and they were not the "moving force" behind

16  Plaintiffs' complaint.  As to the state law claims, ACMC showed that Plaintiffs failed to comply

17  with the California Tort Claims Act, that several immunities applied to Plaintiffs' claims, and that

18  Plaintiffs failed to state a claim as to several of its state law claims.

19  Rather than oppose this Motion, Plaintiffs filed an Amended Complaint.  In the Amended

20  Complaint, Plaintiffs re-advanced most of their prior claims unchanged, ignoring the arguments

21  ACMC raised in its motion.  In addition, they claimed, "on information and belief," that ACMC

22

---

23  [1] "Related Action" refers to the case of *Hutchens, et al. v. County of Alameda, et al.*, case no 06-CV-06870 SBA, filed in this court on November 3, 2006.

24  [2] The version of Plaintiffs' Amended Complaint in the Related Action cited herein is from their "Opposition to Motion to Dismiss and Motion for Leave to File Amended Complaint and Proposed Amended Complaint for Civil Rights

25  Violation under 18 U.S.C. 242, 42 U.S.C. 2000a-6, 1983, 1985, 1986 and 1988, 28 U.S.C. 1343, as well as 815.2, 815.6 and 951 of the California Government Code, 43, 43.3, 49(a), 51.7(a), 52.1(a) and (b), 52.3 of the California

26  Civil Code (the 'Unruh Civil Rights Act'), 306, 307.4 and 309(b) and (d) of the California Welfare and Institutions Code, with "MEMORANDUM OF POINTS AND AUTHORITIES'" (hereafter "Amended Complaint in Related

27  Action").

-3-

28  ALAMEDA COUNTY MEDICAL CENTER'S NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case no. 07 CV 5600 SBA

1    did not have consent to draw Plaintiff Moton and Baby S.A.'s blood or conduct a drug screen and

2    so violated these Plaintiffs' rights.

3         Plaintiffs' new allegations are pure gamesmanship. Mr. Hernandez was initially contacted

4    because Plaintiff Moton tested positive for opiates. However, Plaintiff Moton sought medical care

5    for the birth of her son, Baby S.A. As set forth below, it was not unconstitutional for ACMC to

6    test Ms. Moton's blood in this. Moreover, Plaintiffs admit that the significance of the positive test

7    was resolved immediately, and that Mr. Hernandez did not rely on this positive test when he

8    instituted the hold of Plaintiffs' newborn. Amended Complaint, at 3:6-10, 3:26-28.

9         That hold is the gravamen of Plaintiffs' complaints. Mr. Hernandez instituted the hold for

10   his own reasons. Amended Complaint, at 3:14-15. ACMC was not a part of, nor was it privy to

11   Mr. Hernandez' decision-making process. *Id.* at 3:14 – 4:20. Once the hold was re-instituted by

12   Mr. Hernandez, Plaintiffs' access to their child was restricted by ACMC, but Plaintiffs were not

13   denied all access to their newborn. Instead they admit that "the hospital . . . would not allow

14   Moton to have the baby alone in her room." Amended Complaint, at 3:14-17.

15        There was a custody hearing the following Monday to determine the fate of the baby. *Id.*

16   at 3:20-24. It was held at the Alameda County Department of Social Services. *Id.* at 3:23-26.

17   Neither ACMC nor any of its employees or agents is alleged to have instigated or participated in

18   this hearing. At the hearing, Plaintiffs claim that Mr. Hernandez did not advance any good

19   grounds "to assert that Plaintiff Hutchens was in any way unqualified to have custody of the

20   baby," (*id.* at 4:3-4) and that ultimately "Hernandez and Alameda County Social Services"

21   released the hold on the baby. *Id.* at 4:7-8. Plaintiffs then took their baby home.

22        Plaintiffs never served a California government tort claim on ACMC. Instead they claim to

23   have served one on the County of Alameda[3] on May 2, 2006 (Amended Complaint at 7:17-18,

24   Complaint, at 4:2-4) and then assert as a legal conclusion that claims presented to the County of

---

[3] Plaintiffs have previously admitted that they served "defendants" ***by service*** [of tort claims] ***on the County of Alameda . . . .***" Complaint, at 4:2-4 (emphasis added). If the foregoing were not unambiguous enough, Plaintiffs wrote: "Plaintiffs assert that service of the tort claim on the County of Alameda constituted service on the defendant Alameda County Medical Center." *Ibid.*

-4-

1   Alameda "constituted service on the defendant ACMC . . . ." Amended Complaint, at 7:17-20.

2   They furthermore newly assert, again as a legal conclusion, that ACMC is "estopped" from

3   "asserting that said claims were ineffective . . . ." *Id.* at 20-22.

4   On November 3, 2006, Plaintiffs filed the Related Action against the Alameda County

5   Department of Social Services, Alameda County Department of Children and Family Services, and

6   against Mr. Hernandez individually. Original Complaint in *Hutchens, et al. v. County of Alameda,*

7   *et al.*, United States District Court, Northern District of California, case no. 06-CV-6870 SBA.

8   Plaintiffs never served process on ACMC in this first case. Instead, Plaintiffs in the Related

9   Action asked the court to deem service of process on the County of Alameda as effective service

10  on ACMC. RJN at 2:19 – 3:2. The court correctly denied these attempts. RJN at 3:1-2. The

11  court instead ordered Plaintiffs to serve all defendants in the first case, including ACMC, by

12  October 3, 2007. RJN at 3:3-4. Plaintiffs missed this October 3rd deadline. *See* RJN at 3:5-8.

13  Thereafter on November 2, 2007, Plaintiffs filed a new case, case no. 07-CV-5600 SBA. The two

14  cases were related by court order on February 7, 2008.

15  Plaintiffs' Amended Complaint contains five "counts." Their first "count" is their re-

16  newed 42 U.S.C. section 1983 claim. Complaint, at 5:7-28. Their remaining four "counts" are all

17  state law claims, for violation of California Civil code section 52.1 (count two), battery (count

18  three), intentional infliction of emotional distress (count four) and negligence (count five).

19  Amended Complaint, at 6:6 – 7:15. None of these causes of action are well-pleaded. Therefore,

20  ACMC once more respectfully requests that its motion to dismiss be granted.

21  **II.    ARGUMENT**

22  **A.    Plaintiff Has Failed to Allege Sufficient Facts to State a Section 1983 Claim**

23  **Against ACMC**

24  A public entity is only liable under 42 U.S.C. section 1983 where it has a policy, custom or

25  practice that violates the constitutional rights of an individual. *Monell v. Dep't of Soc. Servs.*, 436

26  U.S. 658, 691 (1978). It bears no vicarious liability for the acts or omissions of, for example, its

27

28
-5-

1    employees. *Ibid.* "[T]o prevail on their § 1983 claims, plaintiffs must have sufficiently alleged

2    that: (1) they were deprived of their constitutional rights by defendants and their employees acting

3    under color of state law; (2) that the defendants have customs or policies which '"amount[] to

4    deliberate indifference'" to their constitutional rights; and (3) that these policies are the '"moving

5    force behind the constitutional violation.""" *Lee v. City of Los Angeles*, 250 F.3d 668, 681-682

6    (9th Cir. 2001). "The causation requirement of section 1983 is not satisfied by a showing of mere

7    causation in fact. *See* W. Prosser, Law of Torts § 41 at 238-39 (4th ed. 1971). Rather, the plaintiff

8    must establish proximate or legal causation." *Arnold v. Internat'l Business Machines Corp.*, 637

9    F.2d 1350, 1355 (9th Cir. 1981). Defendant's acts must be the proximate cause of the injury. *Ibid.*

10           **1.    Plaintiffs Have Failed to Allege Facts to Support a Violation of Their**

11   **Constitutional Rights by ACMC**

12           Here, the Plaintiffs claim that their Fourth[4] and Fourteenth Amendment rights were

13   violated. They claim that ACMC's actions "were part of a pattern and practice to seize and detain

14   children in the absence of an emergency and in the absence of a warrant, without adequate

15   investigation . . . ." Amended Complaint, at 5:18-23. They also newly claim that the initial drug

16   screening of Ms. Moton's blood, which Plaintiffs claim was without consent, was part of a pattern

17   and practice of ACMC to "conduct surreptitious non-consensual screenings for illicit drugs

18   without probable cause or reasonable suspicion that such drugs have been used by the mother."

19   Amended Complaint, at 5:24-27. As set forth below, neither allegation supports a constitutional

20   violation.

21           **a.    Alleged Policy to Seize and Detain Children**

22           As previously argued in the original motion to dismiss, ACMC did not make the decision

23   to "seize or detain" Plaintiffs' newborn. *See, e.g.*, Complaint, at 2:14-16 ("a 'hold' had again been

24   placed on the baby, at the request of Hernandez"); Amended Complaint, at 3:14-16 (same).

25   ACMC did not participate in the decision to re-institute the hold, nor in the investigation that led

26   _____

27   [4] Plaintiffs' claims are appropriately brought under the Fourteenth Amendment, not the Fourth Amendment. *See, e.g.*, *Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir. 1991).

-6-

28   ALAMEDA COUNTY MEDICAL CENTER'S NOTICE OF MOTION AND MOTION TO DISMISS AMENDED
     COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN
     SUPPORT THEREOF
     Case no. 07 CV 5600 SBA

1    up to it.  Complaint, at 2:6-14.  Those are alleged to have been the actions of Mr. Hernandez

2    and/or the County of Alameda.  *Ibid.*

3    Mr. Hernandez's actions do not, and cannot, reflect official policy or custom for ACMC.

4    Mr. Hernandez is not an employee of ACMC.  *Bd. of the County Comm'rs v. Brown*, 520 U.S. 397,

5    403-404 (1997).  Mr. Hernandez is an employee of the County of Alameda.  Complaint, at 2:6,

6    Am. Complaint at 3:6.  The County of Alameda and the Alameda County Medical Center are

7    separate and distinct public entities.  California Health & Safety Code section 101850 permitted

8    the County of Alameda to create an independent public hospital authority "for the purpose of

9    effecting a transfer of the management, administration, and control of the [Alameda County]

10   medical center in accordance with Section 14000.2 of the Welfare and Institutions Code."  Cal.

11   Health & Safety Code § 101850, subd. (b).  Section 101850 specifically provides that if the

12   County creates such a public hospital authority, it shall be a separate public entity from the

13   County:

14            **A hospital authority created pursuant to this chapter shall be a legal
         entity separate and apart from the county** and shall file the statement required by
15       Section 53051 of the Government Code.  **The hospital authority shall be a
         government entity separate and apart from the county, and shall not be
16       considered to be an agency, division, or department of the county.** The hospital
         authority shall not be governed by, nor be subject to, the charter of the county and
17       shall not be subject to policies or operational rules of the county, including, but not
         limited to, those relating to personnel and procurement.

18

19   Cal. Health & Safety Code § 101850, subd. (j) (emphasis added).

20   Pursuant to this statute, in 1998, the County enacted Ordinance 0-98-56.  A copy of this

21   ordinance is attached as part of Exhibit 1 to the Request for Judicial Notice herein.  This ordinance

22   created the Alameda County Medical Center hospital authority as a separate public entity from the

23   County.  ACMC is governed by a Board of Trustees separate and apart from the County Board of

24   Supervisors.  The Alameda County Medical Center appears on the California Secretary of State's

25   Roster of Public Agencies as a separate public agency.  RJN, Exhibit 1 (Roster of Public

26   Agencies).

27

-7-

1    Even if Plaintiffs could claim that they are suing ACMC based on the acts of one of its

2    official policymakers, Mr. Hernandez is not an employee, let alone an official of ACMC. All of

3    the alleged actions Mr. Hernandez took were pursuant to his authority as an Alameda County

4    social worker. He was not "speaking for" ACMC when he made his decision to reinstitute the

5    second hold. Therefore, Mr. Hernandez's decision to reinstitute the hold cannot operate to create

6    section 1983 liability on the part of ACMC.

7    Stripped of the actions taken by Mr. Hernandez, Plaintiff's allegations regarding ACMC's

8    detention of Plaintiffs' newborn are, in essence, that ACMC observed the hold that Mr. Hernandez

9    had placed and, pursuant to that hold, temporarily disallowed Plaintiff from seeing her newborn

10   by herself. Amended Complaint, at 3:14-16. Plaintiffs claim that this conduct amounted to

11   "unlawful[ ] cooperat[ion]" with Mr. Hernandez and the County of Alameda. Amended

12   Complaint, at 4:14-16.

13   This contention cannot support section 1983 liability on the part of ACMC. To impose

14   such liability on this basis would be to, in effect, hold ACMC vicariously liable for Mr.

15   Hernandez's decisions. ACMC cannot be vicariously liable under 42 U.S.C. section 1983. It can

16   only be liable for its own policy, custom or practice that violates the constitutional rights of an

17   individual. *Monell v. Dep't of Soc. Servs.*, *supra*, 436 U.S. 658, 691.

18   The "policy" Plaintiffs seek to hold ACMC liable for is a policy of following California

19   law. In California, if a mother tests positive for a controlled substance, the law requires that a

20   needs assessment be performed before the infant may be released from the hospital. Cal. Penal

21   Code § 11165.13; Cal. Health & Saf. Code § 123605. The assessment may be made by a health

22   practitioner or a medical social worker. Cal. Health & Saf. Code § 123605, subd. (b). State law

23   further requires that this assessment include identifying any needed services for the mother, child

24   or family, and determining the "level of risk to the newborn upon release to the home and the

25   corresponding level of services and intervention, if any, necessary to protect the newborn's health

26   and safety, including *referral to the county welfare department for child welfare services.*" *Id.* at

27

28

-8-

1  §123605, subd. (c)(2) (emphasis added).  A social worker, in turn, may under California law

2      **[t]ake into and maintain temporary custody of, without a warrant,** a minor . . .
3  who the social worker has reasonable cause to believe is a person described in
    subdivision (b)[5] or (g)[6] of [Welf. & Instit. Code] Section 300, and the social
    worker has reasonable cause to believe that the minor has an immediate need for
4      medical care or is immediate danger of physical or sexual abuse or the physical
    environment poses an immediate threat to the child's health or safety.

5

6  Cal. Welf. & Instit. Code § 306(a)(2) (emphasis added).  Subdivisions (b) and (g) of section 300

7  describe situations in which a child is in substantial risk of being abused, or is left without any

8  support.

9      After a hold is instituted, the social worker is to place the child in a "facility authorized by

10  law to care for the child."  Cal. Welf. & Instit. Code § 308, subd. (a).  If a child is taken into

11  custody while in the care of a "physician or surgeon **or a hospital,** . . . and cannot be immediately

12  moved," "the child shall **be deemed to have been taken into temporary custody** and delivered to

13  the social worker . . . **while the child is at the . . . medical facility.**"  Cal. Welf. & Instit. Code §

14  309, subd. (b) (emphasis added).

15      ACMC's actions were entirely consistent with the hold that had been placed on Plaintiff's

16  child by Mr. Hernandez.  Because the infant was a newborn, and was already at Highland Hospital

17  (part of ACMC), that infant simply remained at Highland while the dependency investigation

18

---

19  [5] Section 300(b) of the Welfare and Institutions Code provides in relevant part:
20      The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm
    or illness, as a result of the failure or inability of his or her parent or guardian to adequately
21      supervise or protect the child, or the willful or negligent failure of the child's parent or guardian to
    adequately supervise or protect the child from the conduct of the custodian with whom the child has
    been left, or by the willful or negligent failure of the parent or guardian to provide the child with
22      adequate food, clothing, shelter, or medical treatment, or by the inability of the parent or guardian to
    provide regular care for the child due to the parent's or guardian's mental illness, developmental
23      disability, or substance abuse. . . . .
  [6] Section 300 (g) of the Welfare and Institutions Code provides:
24      The child has been left without any provision for support; physical custody of the child has been
    voluntarily surrendered pursuant to Section 1255.7 of the Health and Safety Code and the child has
25      not been reclaimed within the 14-day period specified in subdivision (e) of that section; the child's
    parent has been incarcerated or institutionalized and cannot arrange for the care of the child; or a
26      relative or other adult custodian with whom the child resides or has been left is unwilling or unable
    to provide care or support for the child, the whereabouts of the parent are unknown, and reasonable
27      efforts to locate the parent have been unsuccessful.

28  ALAMEDA COUNTY MEDICAL CENTER'S NOTICE OF MOTION AND MOTION TO DISMISS AMENDED
COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT THEREOF
Case no. 07 CV 5600 SBA

1  progressed.  Cal. Welf. & Instit. Code § 309.  This is consistent with California law.  There is no

2  allegation that ACMC kept Plaintiffs' infant any longer than was required by the hold.  There is no

3  allegation that Plaintiffs were completely deprived of any contact with their newborn.  Rather, that

4  access was restricted such that Ms. Moton could not be alone with her infant.

5       ACMC did not participate in, nor was it privy to, Mr. Hernandez's decision making.  This

6  is true of many entities who are confronted with a decision by a third party to institute a hold.

7  Plaintiffs now seek to impose section 1983 liability against ACMC because it observed the

8  temporary hold imposed by separate, duly authorized third party.  Under such a theory of section

9  1983 liability, every entity that merely observes a temporary hold can be held, essentially,

10  vicariously liable for the decision to impose that hold.  Section 1983 does not permit entities to be

11  held vicariously liability for the acts of their employees.  By that same token, section 1983 should

12  not be used to impose vicarious liability on third parties who did not even participate in the

13  decision that Plaintiffs contend was unconstitutional.

14       As to the hold, there is no conduct by ACMC that is alleged to have constituted an

15  independent constitutional violation.  A hold had been placed on Plaintiffs' child by a duly

16  authorized social worker.  ACMC observed that hold, but did not do so in a manner that imposed

17  unnecessary burdens on Plaintiffs.  ACMC allowed Plaintiffs access to their child under ACMC

18  observation.  ACMC did not go beyond what was necessary to observe the hold that was in place.

19  Given the hold that was in place, this conduct, by itself, does not rise to the level of a constitutional

20  violation.

21       **b.    Alleged Policy of Non-Consensual Screening**

22       Plaintiffs newly challenge the screening of Ms. Moton's and Baby S.A.'s blood.  However

23  the allegations of Plaintiffs' various complaints in this and in the Related Action make clear that

24  any testing was done in the context of providing Ms. Moton and her child with medical care.  Even

25  assuming that any blood drawn from Ms. Moton and her child was taken without her consent,[7] the

26

27  _____

   [7] This is, at least in part, a legal conclusion, which the court need not accept as true.  ACMC furthermore questions
   Plaintiffs making such an allegation "on information and belief."  (Amended Complaint, at 3:3-5.)

28  ALAMEDA COUNTY MEDICAL CENTER'S NOTICE OF MOTION AND MOTION TO DISMISS AMENDED
   COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN
   SUPPORT THEREOF
   Case no. 07 CV 5600 SBA

1   United States Supreme Court upholds such testing against a Fourth Amendment challenge "when

2   'special needs' other than the normal need for law enforcement provide sufficient justification."

3   *Ferguson v. City of Charleston*, 532 U.S. 67, 74 n.7 (2001) (hereafter *Ferguson*).   In so-called

4   "special needs" cases, warrantless, suspicionless drug testing may be constitutionally performed

5   where the special needs that support such testing outweigh the individual's interest in privacy.  *Id.*

6   at 78.  Among the critical questions courts examine is whether the testing was done for a legitimate

7   "special need," as opposed to for law enforcement purposes.   *Ibid.*   The Court has upheld

8   suspicionless, warrantless drug testing of, for example, high school students (*Vernonia School*

9   *District 47J v. Acton*, 515 U.S. 646 (1995)) and customs officials (*National Treasury Employees*

10  *Union v. Von Raab*, 489 U.S. 656 (1988)), because the special needs advanced by such testing

11  supported these searches.   Similarly, the Ninth Circuit has upheld suspicionless, warrantless

12  searches of individual homes of government benefits recipients, again under a special needs

13  analysis. *Sanchez v. County of San Diego,* 464 F.3d 916 (9th Cir. 2006).

14        Here, the blood testing and drug screen were done in the context of providing Plaintiff

15  Moton with medical care regarding the birth of Baby S.A.  Special needs exist to test the blood of

16  mother and child in the context of a birth.   Testing to determine, at a minimum, blood type, is

17  relevant, so that blood may be replaced during or after delivery, if necessary.  Blood tests also can

18  reveal general physical health of mother and child in ways that other forms of monitoring cannot.

19  Blood testing can reveal potential birth complications and help doctors avoid transmission of

20  disease from mother to child.  The presence of drugs (legal and otherwise) in the mother's system

21  adversely affects the health of mother and child.  This is not a hypothetical danger, but a concrete

22  one.  *Cf. Chandler v. Miller*, 520 U.S. 305, 318-319 (U.S. 1997).  Knowledge of the presence of

23  any such drugs is medically relevant to providing care for both mother and baby during birth.

24  Even had the testing been done solely to ascertain whether mother and baby were at risk for child

25  abuse or neglect, a proposition nowhere supported by the Amended Complaint, the United States

26  Supreme Court has implicitly recognized that prevention of child abuse and neglect is a legitimate

27

-11-

28

1  "special need" for such testing, provided such testing is not for law enforcement purposes.

2  *Ferguson, supra*, 532 U.S. 67, 79-80.

3          This is not a case where toxicology screening was done for the purpose of assisting law

4  enforcement.  *Cf. Ferguson, supra* , 532 U.S. 67, 80-81 ( "physicians . . . , in the course of

5  ordinary medical procedures aimed at helping the patient herself, come across information that

6  under rules of law or ethics is subject to reporting requirements, which no one has challenged

7  here.").  There is no allegation that ACMC tested Plaintiff Moton to obtain criminal evidence, nor

8  that it disclosed to law enforcement the results of the test.  Plaintiffs also could not reasonably so

9  allege.  Cal. Penal Code § 11165.13.

10          Courts often consider alternatives to the alleged search.  *See, e.g., Sanchez v. County of San*

11  *Diego, supra*, 464 F.3d 916, 827-28.  Here, practical, less intrusive alternatives to obtain this

12  medical knowledge are few.  One can readily imagine the birth occurring well before a warrant can

13  be obtained.  Blood tests may be the only way to definitively determine the mother and child's

14  medical condition.  In the particular case of illegal drugs, a mother will not often admit to using

15  drugs.  And yet it is a fact well-known in the community that illegal drugs present serious health

16  risks to both mother and child.  Advance knowledge of such drug use can be critical to ensuring a

17  safe and healthy birth.

18          The testing alleged here was done by a hospital in the context of giving medical care to

19  Plaintiff Moton and her baby.  It was supported by a special need – medical treatment for mother

20  and child – and was done pursuant to that need, and not for law enforcement purposes.  There was

21  no constitutional violation here.

22          **2.     ACMC Did Not Have Customs or Policies Which Amount to Deliberate**

23  **Indifference to Plaintiffs' Constitutional Rights**

24          The second element of a section 1983 claim is that the asserted custom or practice must

25  amount to deliberate indifference of the Plaintiffs' constitutional rights.  ACMC did not have any

26  customs, policies or practices that reflect deliberate indifference to those rights.  Plaintiffs' various

27

28

-12-

ALAMEDA COUNTY MEDICAL CENTER'S NOTICE OF MOTION AND MOTION TO DISMISS AMENDED
COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT THEREOF
Case no. 07 CV 5600 SBA

1  complaints all reflect that they were at ACMC for the birth to Plaintiffs' son, and Plaintiff Moton's

2  blood was tested in this context. Any testing of Ms. Moton's blood was not done for an improper,

3  law enforcement purposes, nor was any result put to improper use. Plaintiffs and Mr. Hernandez

4  both admit that the result did not form any basis for the temporary hold that Mr. Hernandez later

5  imposed. Am. Complaint, at 3:6-13, 3:26-28. Such actions do not reflect a deliberate indifference

6  to Plaintiffs' constitutional rights.

7         In terms of the hold instituted by Mr. Hernandez, ACMC's observation of it does not

8  reflect deliberate indifference to Plaintiffs' constitutional rights. Mr. Hernandez's decision to

9  impose that hold did not reflect "policy" of ACMC. ACMC should not be condemned for,

10 essentially, the "policy" of observing the requirements of a hold placed by a duly authorized third

11 party, especially when ACMC did not participate in that decision. For this additional reason,

12 Plaintiffs' section 1983 claim against ACMC should be dismissed.

13         **3.    ACMC's Policies or Customs Were Not the Moving Force Behind the**

14 **Alleged Violation**

15         Finally, Plaintiffs cannot, and have not, alleged facts to show that *ACMC's* policies or

16 customs were the "moving force" behind Plaintiffs' alleged constitutional injuries. The gravamen

17 of Plaintiffs' complaint is that they believe Mr. Hernandez' decision to impose the hold was

18 improper. That decision was not ACMC's, nor did ACMC participate in that decision. ACMC's

19 alleged policy of "cooperation" with the hold was, at most, secondary to Plaintiffs' alleged

20 constitutional violation. As far as ACMC knew, the hold was lawfully imposed by a duly

21 authorized third party. *ACMC's policies or customs* were not the "moving force" behind any

22 alleged constitutional violation that this hold represented. The moving force was a decision

23 previously made by an unrelated third party who did not speak for, or act on behalf of, ACMC.

24         As for the blood testing, this was done in the context of, and for the purpose of, the

25 provision of medical care to Plaintiff Moton and her child. No law enforcement use was made of

26 these test results. Plaintiffs admit that this test did not cause or contribute to the hold that Mr.

27

28

-13-

1    Hernandez later instituted.[8]    For this additional reason, Plaintiffs' section 1983 claim against

2    ACMC should be dismissed.

3    **B.    Plaintiffs' State Law Claims Are Time-Barred**

4    Turning exclusively to Plaintiffs' state law claims, these claims are, at the outset, time-

5    barred under California Government Tort Claims Act. "Generally speaking, no suit for money or

6    damages may be brought against a public entity on a cause of action for which a claim is required

7    to be presented until a written claim has been presented to the public entity and has been acted

8    upon by the board, or has been deemed to have been rejected by the board." *Munoz v. State of*

9    *California*, 33 Cal.App.4th 1767, 1776 (Cal. Ct. App. 1995); Cal. Gov. Code §§ 905, 905.2, 911.2,

10   945.4.  California law requires the injured party to present a claim within six months of his or her

11   cause of action.  Cal. Gov. Code §§ 911.2, 945.4.  If the injured party fails to file a timely claim, a

12   written application may be made to the public entity for leave to present a late claim, provided,

13   however, that the application is made within a reasonable time, "**not to exceed one year of the**

14   **accrual of the cause of action**."  Cal. Gov. Code § 911.4.

15   Plaintiffs have previously admitted that they have only served a claim on the County of

16   Alameda.  Complaint, at 4:3-6; Complaint in Related Action, at 9:20-21; Amended Complaint in

17   Related Action, at 15:23.  As to ACMC, they claim that "service of a tort claim on the County of

18   Alameda constituted service on [ACMC]."  Amended Complaint at 7:19-20.  They also further

19   contend that ACMC is "estopped" from asserting that Plaintiffs' claims on the County of Alameda

20   were ineffective as to ACMC because allegedly ACMC and the County of Alameda "hold

21   themselves out to the public as a single entity."  Plaintiffs' arguments fail.

22   First, the allegedly wrongful acts all took place in November 2005.  At the latest, the six-

23   month claims presentment deadline ran out by June 2006.  The tort claims act gave Plaintiffs a

24   year after the accrual of the claim (or until November 2006) to file suit and seek leave to proceed

25   without filing a claim.  Cal. Gov. Code § 911.4.  Plaintiffs failed to seek leave.  California case

---

[8] But-for causation is not sufficient to support section 1983 liability. *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 837 (9th Cir. 1996).

-14-

1    authority establishes that presenting a claim (and otherwise following the requirements of the Tort

2    Claims Act) is a jurisdictional requirement. *Dixon v. City of Turlock*, 219 Cal. App. 3d 907, 913

3    (Cal. Ct. App. 1990). Once the year deadline passed, neither the public entity nor the courts have

4    any discretion to waive or otherwise relieve a party from his or her failure to file a timely claim or

5    file an application to seek to file suit without a claim. *Ibid.* Since Plaintiffs have never filed a

6    claim with ACMC, their state law claims are now irretrievably barred.

7            Plaintiffs' contentions that "service of the tort claim on the County of Alameda constituted

8    service on the defendant Alameda County Medical Center," and that ACMC is "estopped" from

9    claiming that no claim was presented to them, are both legal conclusions, which this court is not

10   required to accept as true. *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (on a motion to dismiss,

11   courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Both

12   assertions are also legally baseless.

13           As set forth in the prior section, the County and ACMC are separate public entities. As

14   such, California case authority holds that Plaintiffs' presentment of a claim to the County of

15   Alameda does not operate as presentment of such a claim to ACMC. *See, e.g. Santee v. Santa*

16   *Clara County Office of Educ.*, 220 Cal.App.3d 702, 713-714 (Cal. Ct. App. 1990). Again, ACMC

17   and the County are totally separate public entities. They are each run by a separate boards. As the

18   court in *Santee v. Santa Clara County Office of Education* held, under these circumstances,

19   presentment of a claim on the County does not effectuate presentment of a claim on ACMC. *Ibid.*

20           There is no basis for any "estoppel" here. ACMC is a separate public entity, and holds

21   itself out as such, as evidenced by all of the documents attached to the Request for Judicial Notice

22   in support of this motion. Plaintiffs' self-serving statements to the contrary are pure legal

23   conclusions, and are contradicted by documents that this court can judicially notice. Plaintiffs are

24   well aware of the separate status of ACMC, as reflected by documents filed in the Related Action.

25   *See, e.g.*, Motion for Extension of Time for Service of Summons and Complaint Upon Defendant

26   Alameda County Medical Center (Document 53 in the Related Action), Motion to join Alameda

27

                                                    -15-

28   ALAMEDA COUNTY MEDICAL CENTER'S NOTICE OF MOTION AND MOTION TO DISMISS AMENDED
     COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN
     SUPPORT THEREOF
     Case no. 07 CV 5600 SBA

County Medical Center as a party to this case (Document 55 in the Related Action). This court in the Related Action ordered them to serve process on ACMC in the Related Action by October 3, 2007, which they failed to do. *See* Minute Order in the Related Action, (Document 51), filed on September 19, 2007.

Because Plaintiffs never presented a claim to ACMC, Plaintiffs' state law claims are time-barred. Therefore, Plaintiffs' state law claims should be dismissed without leave to amend.

### C.    Plaintiffs' State Law Claims are Barred by State Law Immunities

Even if Plaintiffs' state law claims were not time-barred, various state law immunities bar Plaintiffs' state claims against ACMC. Under the California Tort Claims Act, "[e]xcept as otherwise provided by statute: [¶] (a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." Cal. Gov. Code § 815, subd. (a). "The liability of a public entity established by this part (commencing with Section 814) is subject to any immunity of the public entity provided by statute, including this part, and is subject to any defenses that would be available to the public entity if it were a private person." Cal. Gov. Code § 815, subd. (b); *Jacqueline T. v. Alameda County Child Protective Services*, 155 Cal.App.4th 456, 464 (Cal. Ct. App. 2007).

Government Code section 820.4 immunizes public employees for their acts or omissions, while exercising due care, in the execution or enforcement of any law. Here, Plaintiffs appear to hold ACMC liable for enforcing the temporary hold that Mr. Hernandez imposed on Plaintiffs' newborn infant. ACMC had no reason to know or believe that there was anything unlawful about that hold. Therefore, pursuant section 820.4, ACMC is immune for its actions in enforcing the hold.

Government Code section 820.2 also immunizes ACMC to the extent that ACMC's acts and omissions regarding the hold were discretionary. Section 820.2 immunizes a public employee for acts or omissions that were the result of the exercise of discretion vested in him, regardless of whether that discretion was abused. Here, Plaintiffs complain that ACMC observed and followed

-16-

1   the hold that Mr. Hernandez had imposed.  To the extent that Plaintiffs' claim that ACMC had

2   discretion to ignore, or supersede, the requirements of the hold imposed by Mr. Hernandez, ACMC

3   asserts that it is immune from liability for this discretionary decision, pursuant to Government

4   Code section 820.2.

5       Government Code section 821.6 also immunizes ACMC.  Section 821.6 immunizes a

6   public entity for any injury caused by a public employee instituting or prosecuting any judicial or

7   administrative proceeding within the scope of his or her employment.  Cal. Gov. Code § 821.6.

8   While ACMC was not the instigator of the hold, ACMC acted pursuant to that hold to protect the

9   newborn while the child abuse investigation was proceeding.  Since ACMC's actions in enforcing

10  the hold were incidental to the investigation, ACMC and its personnel are immune under section

11  821.6.  *Jacqueline T. v. Alameda County Child Protective Services, supra*, 155 Cal. App. 4th 456,

12  468 (holding an employee's incidental actions taken in the course of investigating a child abuse

13  case are immune).

14  **D.    Plaintiffs' Civil Code Section 52.1 Claim is Not Well-Pleaded**

15      Lastly, Plaintiffs' claim under California Civil Code section 52.1 fails on its face.  Section

16  52.1 reads in pertinent part:

17          (a) If a person or persons, whether or not acting under color of law,
            interferes *by threats, intimidation, or coercion, or attempts to*
18          *interfere by threats, intimidation, or coercion*, with the exercise or
            enjoyment by any individual or individuals of rights secured by the
19          Constitution or laws of the United States, or of the rights secured by
            the Constitution or laws of this state . . . .
20
            (b) Any individual whose exercise or enjoyment of rights secured by
21          the Constitution or laws of the United States, or of rights secured by
            the Constitution or laws of this state, has been interfered with, or
22          attempted to be interfered with, *as described in subdivision (a),* may
            institute and prosecute in his or her own name and on his or her own
23          behalf a civil action for damages, including, but not limited to,
            damages under Section 52, injunctive relief, and other appropriate
24          equitable relief to protect the peaceable exercise or enjoyment of the
            right or rights secured. (emphasis added)
25

26      Plaintiffs nowhere allege that ACMC engaged in any threats, intimidation, or coercion.  In

27

-17-

28

1  order to sustain a violation of Civil Code section 52.1, a plaintiff must show an attempted or

2  completed act of interference with a legal right, *accompanied by a form of coercion.  City and*

3  *County of San Francisco v. Ballard* , 136 Cal.App.4th 381, 408 (Cal. Ct. App. 2006).  "The

4  language of section 52.1 provides remedies for 'certain misconduct that interferes with' federal or

5  state laws, *if accompanied by threats, intimidation, or coercion, and whether or not state action is*

6  *involved.*"  *Venegas v. County of Los Angeles*, 32 Cal.4th 820, 843 (Cal. 2004), citing *Jones v.*

7  *Kmart Corp.*, 17 Cal.4th 329, 338 (Cal. 1998) (emphasis added).  Because Plaintiffs have not pled,

8  and under no circumstances did there exist, any conduct by ACMC rising to the level of a threat of

9  violence, intimidation, or coercion, Plaintiffs fail to satisfy the requirements for a claim under

10  California Civil Code section 52.1.  For this additional reason, ACMC's motion to dismiss should

11  be granted.

12  **III.    CONCLUSION**

13      Plaintiffs' claims against ACMC are meritless.  The section 1983 claim against ACMC

14  fails.  Plaintiffs primarily seek to impose section 1983 liability on ACMC for a decision made by a

15  third party, Mr. Hernandez, to impose a temporary hold.  That decision was not a product of

16  ACMC's policy, custom or practice.  The actions ACMC's took pursuant to this hold did not,

17  themselves, constitute constitutional violations, and ACMC's alleged practice of observing

18  temporary holds does not reflect "deliberate indifference" to Plaintiffs' constitutional rights.  As

19  for the alleged unconsented-to blood tests, such testing was pursuant to a special need– i.e. medical

20  care in the context of a birth.  There is no alleged conduct to support any deliberate indifference to

21  Plaintiffs' rights, let alone any ultimate harm to Plaintiff or her child as a result.  *ACMC's* actions

22  were not truly the "moving force" behind Plaintiff's alleged constitutional violations, which arise

23  out of the hold imposed by Mr. Hernandez.  That decision was not made by ACMC.

24      As for Plaintiffs' state law claims, they are time-barred by the California Tort Claims Act.

25  Even if the state law claims were not time-barred, ACMC is immunized from liability by various

26  state law immunities.  Also Plaintiffs' Civil Code section 52.1 claim is not well-pleaded.

27

28

1        For all of the foregoing reasons, defendant ACMC respectfully requests that the court grant

2   this motion in its entirety without leave to amend.

3   DATED:  March 14, 2008

                                        BOORNAZIAN, JENSEN & GARTHE
4                                       A Professional Corporation

5

6                                       By:  _____/s/ Jill Sazama, Esq._____
                                             JILL P. SAZAMA, ESQ.
7                                            Attorneys for Defendant
                                        ALAMEDA COUNT MEDICAL
8                                              CENTER

9
    24981\427373
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27
                                            -19-
28  ALAMEDA COUNTY MEDICAL CENTER'S NOTICE OF MOTION AND MOTION TO DISMISS AMENDED
    COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN
    SUPPORT THEREOF
    Case no. 07 CV 5600 SBA

**PROOF OF SERVICE BY ELECTRONIC SERVICE**

I, the undersigned, declare as follows:

I am employed in the County of Alameda, State of California. I am over the age of 18 years and not a party to the within action. My business address is 555 12th Street, Suite 1800, P. O. Box 12925, Oakland, California 94604-2925.

On the date indicated below, at the above-referenced business location, I served the **ALAMEDA COUNTY MEDICAL CENTER'S NOTICE OF MOTION AND MOTION TO DISMISS THE AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SAME, REQUEST FOR JUDICIAL NOTICE, EXHIBIT 1, AND [PROPOSED] ORDER** on the below-named party and caused said document to be transmitted using ECF as specified by General Order No. 45 to the following party:

Frances S. Kaminer, Esq.  
Walter K. Pyle, Esq.  
LAW OFFICES OF WALTER K. PYLE  
2039 Shattuck Avenue, Suite 202  
Berkeley, CA 94704  
Telephone: 510-849-4424

**Attorneys for Plaintiffs**  
**JOHN F. HUTCHENS, SAMORA MOTON,**  
**and BABY S.A., by John F. Hutchens**

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed at Oakland, California, on March 14, 2008.

/s/ Carmen Kalt
_____
Carmen Kalt

24981\427373

-20-

ALAMEDA COUNTY MEDICAL CENTER'S NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case no. 07 CV 5600 SBA